**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ollie THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 25, 2014.

Filed May 22, 2014.

---

Ruth A. Moyer, Philadelphia, for appellant.

Jonathan M. Levy, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, P.J.E., PANELLA, J., and LAZARUS, J.

OPINION BY BENDER, P.J.E.

Appellant, Ollie Thompson, appeals from the judgment of sentence of 5–10 years' incarceration imposed following his conviction for possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780–113(a)(30). Appellant contends the trial court erred in denying his motions to suppress the seized evidence, and to dismiss the charges against him pursuant to Pa.R.Crim.P. 600. Appellant also claims that the evidence was insufficient to sustain his conviction, the verdict was against the weight of the evidence, and the trial court erred in limiting his cross-examination of a Commonwealth witness. After careful review, we vacate Appellant's illegal sentence and remand for an evidentiary hearing.

The trial court summarized the facts adduced at trial as follows:

The Commonwealth presented evidence of an investigation surrounding suspected narcotics activity and police observation of a narcotics transaction. Police Officer Joseph Ellingsworth, badge number 5349, testified regarding his role in a narcotics investigation on December 3, 2009. Officer Ellingsworth conducted narcotics surveillance of a convenience store parking lot at the 7200 block of Brous Avenue. Surveillance was initiated after police received numerous complaints of suspected narcotics activity from the store owner and neighbors.

Within fifteen minutes of setting up surveillance, Officer Ellingsworth observed a red minivan pull into the parking lot. The driver of the minivan, later identified as Selena Bradsher, remained inside the vehicle after parking. Approximately five to ten minutes later a white Cadillac entered the parking lot. The driver, later identified as the Appellant, summoned Ms. Bradsher to his vehicle by waving and yelling. Officer Ellingsworth then followed the Appellant as he proceeded to drive eastbound on Cottman Avenue. The Appellant turned onto nearby Battersby Street and parked near the curb. The Appellant exited his vehicle and entered a white sport utility vehicle parked nearby. The Appellant sat in the rear passenger seat of the vehicle which contained three additional occupants. Officer Ellingsworth exited his vehicle and maneuvered behind a nearby bush approximately fifteen to twenty feet from the targeted vehicle for further observation. Officer Ellingsworth was able to clearly observe the vehicle interior. [One of t]he passenger[s] of the vehicle, later identified as Matthew Furentino, handed the Appellant an unknown amount of United States currency. After counting the money, the Appellant exited the vehicle and retrieved a clear baggie from deep grass at the base of a nearby iron fence. The Appellant then tossed the baggie into the vehicle and returned to his own vehicle. The vehicle receiving the baggie immediately left the area.

Both vehicles were subsequently stopped for investigation within a few minutes. Sergeant Michael Cerruti, badge number 8649, stopped the white sport utility vehicle near the 7100 block of Brous Street. Sergeant Cerruti recovered a Ziplock baggie containing alleged narcotics from Mr. Furentino's rear waistband. A police department chemical lab report yielded the following results regarding the substances recovered: forty green pills of Oxycontin; twenty-eight yellow pills of Alprazolam; eighteen yellow pills of Oxycontin. The total weight of the Oxycontin was 13.042 grams. Following the stop by Sergeant Cerruti, Police Officer Michael Schaffer, badge number 3219, stopped the Appellant's vehicle at the direction of Officer Ellingsworth. Police recovered United States currency from numerous areas of the Appellant's clothing. The total amount of currency recovered was $2,004 in the following denominations: one fifty-dollar bill; eighty-nine twenty-dollar bills; nineteen one-dollar bills.

Trial Court Opinion (TCO), 5/24/13, at 1–3.

Following his arrest on December 3, 2009, Appellant was charged with PWID and related offenses. He filed a motion to suppress the seized contraband as well as a motion to dismiss pursuant to Rule 600, both of which were denied by the trial court after a hearing held on October 24, 2011. Appellant's jury trial commenced on October 25, 2011. The jury convicted Appellant of PWID on October 27, 2011. On January 19, 2012, the trial court sentenced Appellant to a mandatory sentence of 5–10 years' incarceration pursuant to 18 Pa.C.S. § 7508(a)(2)(ii).

Appellant filed a timely *pro se* notice of appeal. The trial court initially filed a Pa.R.A.P. 1925(a) opinion determining that Appellant waived all of his potential claims on appeal due to his failure to file a Rule 1925(b) concise statement of errors complained of on appeal (concise statement). Appellant subsequently filed a motion to remand with this Court, arguing that he was unable to draft a timely concise statement due to a change in counsel and the fact that the notes of testimony had yet to be transcribed. On July 10, 2012, we remanded to the trial court, directing the

court to order the transcription of the notes of the testimony and to permit Appellant to file a concise statement within 21 days of the date that the notes of testimony were provided to him. Appellant then filed a timely concise statement and the trial court issued a supplemental Rule 1925(a) opinion. Appellant now presents the following claims for our review:

I. Under the Fourth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 8 of the Pennsylvania Constitution, did the trial court err in failing to suppress all evidence obtained as a fruit of the warrantless search and seizure of Appellant?

II. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, did the trial court err in concluding that no violation of Pa.R.Crim.P. 600 had occurred where more than 365 days of time not attributable to the defense elapsed between Appellant's arrest and his trial?

III. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, was the evidence insufficient to sustain Appellant's conviction for Possession With the Intent to Deliver a Controlled Substance ("PWID")?

IV. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, was Appellant's PWID conviction against the weight of the evidence?

V. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, did the trial court err in barring trial counsel from cross-examining a police officer about, *inter alia,* his monetary compensation and experience testifying?

Appellant's Brief at 4.

Appellant's first argument posits that the trial court erred in denying his suppression motion. He claims that the police lacked reasonable suspicion to support his initial detention. Alternatively, he asserts that police did not have probable cause to effectuate his subsequent arrest.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo,* 46 A.3d 781, 783–84 (Pa.Super.2012) (quoting *Commonwealth v. Hoppert,* 39 A.3d 358, 361–62 (Pa.Super.2012)).

 Interactions with police are classified as mere encounters, investigative detentions, or formal arrests. *Common-*

*wealth v. Ellis,* 379 Pa.Super. 337, 549 A.2d 1323, 1331 (1988).

> Police may engage in a mere encounter absent any suspicion of criminal activity, and the citizen is not required to stop or to respond. If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot, and the citizen is subjected to a stop and a period of detention. Probable cause must support a custodial interrogation or an arrest.

*Commonwealth v. Boswell,* 554 Pa. 275, 721 A.2d 336, 341 (1998) (citations omitted).

Relying on *Commonwealth v. Walton,* 63 A.3d 253 (Pa.Super.2013), Appellant asserts that the police lacked reasonable suspicion to temporarily detain him while the occupants of the white SUV were searched. We disagree.

In *Walton,* this Court held that

> the trial court erred in concluding that Officer Bridges had reasonable suspicion that [the a]ppellant was involved in criminal activity allowing an investigative detention. At the suppression hearing, Officer Bridges testified that he "saw a white male and female in the parking lot kind of walking around, pacing back and forth," and that "[t]hey were on and off their cell phone several times looking around." Officer Bridges stated that this conduct "looked kind of suspicious to [him]." He explained that based on his experience, he knew "that's how a lot people will meet with drug dealers or drug dealers themselves will stand in a parking lot to meet them." When Appellant's vehicle pulled up to the couple in the parking lot and "they started talking to each other" Officer

Bridges stated, "it looked like some type of deal was going to go down." Testimony indicated that Officer Bridges was in a marked police car across the street from the parking lot at 1:51 p.m. and there was no indication that this was a high crime or drug intensive neighborhood. The record thus reflects insufficient evidence to justify an "investigative stop." Without more, Officer Bridges' observations are consistent with innocent activity and nothing more than a hunch a drug transaction was to transpire.

*Id.* at 258.

■ In the present case, however, police observations were not merely the product of happenstance. Officer Ellingsworth engaged in surveillance of the 7–Eleven after being prompted by the complaints of concerned citizens. Subsequently, Officer Ellingsworth observed Appellant approach the white SUV which appeared to be waiting for him. Appellant got into the vehicle and, after a brief conversation, he received cash and began to count it. Appellant then retrieved a plastic baggy from a hiding place next to a fence located nearby and tossed it into the white SUV. Officer Ellingsworth testified that he had 23 years' experience as a police officer including 10 years in narcotics interdiction, including specialized narcotics training. He had been involved in 75–100 drug arrests within 2 blocks of the 7–Eleven parking lot in question, and his observations were consistent with prior narcotics transactions he observed in that area. *Walton* is factually distinguishable. In that case, the police were not acting on any tip, they could not describe what was exchanged in the transaction, and the events did not transpire in a high crime area. Given the totality of the circumstances here, we conclude that the temporary detention of Appellant was supported by at least a reasonable suspi-

cion that criminal activity was afoot. Appellant's claim is meritless.

■ Appellant also argues that the police did not have probable cause to arrest him. We disagree. While Appellant was temporarily detained, police found a plastic baggie, consistent with Officer Ellingsworth's observations, in the waistband of Fuerentino's pants. That bag contained more than 100 prescription pills. This discovery occurred just moments after the transaction with Appellant was observed. This confirmation of Officer Ellingsworth's suspicions was sufficient to provide probable cause to arrest Appellant. Appellant's contention that because Officer Ellingsworth did not testify that the plastic baggie was similar or identical to the one he had observed in the transaction does not prevent a reasonable inference that it was.

> Probable cause to effectuate an arrest exists when the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense. In addressing the existence of probable cause, courts must focus on the circumstances as seen through the eyes of the trained police officer, taking into consideration that probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act.

*Commonwealth v. Romero*, 449 Pa.Super. 194, 673 A.2d 374, 376–77 (1996) (internal citations and quotation marks omitted).

In this case, very little time elapsed between the observation of the transaction and the discovery of the baggie. It was both reasonable and prudent for the police to believe that the baggie observed in the transaction was the same one found in Fuerentino's waistband moments later. Consequently, Appellant's second argument also lacks merit. We conclude, therefore, that the trial court did not abuse its discretion when it denied his suppression motion.

■ Next, Appellant claims that the trial court erred when it denied his motion to dismiss the charges on Rule 600 grounds. We review such claims according to the following principles:

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

> The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative man-

date of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters . . ., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos,* 936 A.2d 1097, 1100 (Pa.Super.2007) (quoting *Commonwealth v. Hunt,* 858 A.2d 1234, 1238–39 (Pa.Super.2004) (*en banc* )).

Rule 600 provides, in pertinent part, as follows:

(A) Commencement of Trial; Time for Trial

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\* \* \*

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

\* \* \*

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

\* \* \*

(D) Remedies

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P 600.

■ Here, the trial court determined: Although more than 365 days had elapsed before Appellant's trial commenced, the court determined that the Commonwealth demonstrated due diligence and that a significant portion of the delay was beyond its control. Multi-

ple defense requests accounted for approximately 131 days of excludable time.[2] Additionally, two significant periods of delay resulted from administrative error; specifically, the Appellant twice was not brought down from state custody resulting in an aggregate delay of approximately 309 days.[3]

[2] Excludable time: 5/11/10–5/18/10 (7 days), 5/18/10–8/4/10 (78 days), 8/19/10–9/13/10 (25 days), 11/10/10–12/20/10 (21 days). *See* N.T. 10/24/11 at 7–9; see also Quarter Sessions file.

[3] Excusable delay: 5/9/11–10/25/11 (169 days), 12/20/10–5/9/11 (140 days). *See* N.T. 10/24/11 at 9.

TCO at 4.

Appellant contends the two delays the trial court attributes to "administrative error," comprising an aggregate total of 309 days, were in fact delays attributable to the Commonwealth. If true, Appellant was tried beyond the 365 day period prescribed by Rule 600, even after adjusting the Rule 600 run date for the other excludable time. Appellant contends that the Commonwealth "bore the burden of demonstrating that it sought a writ from the court ordering that Appellant be brought down [from state custody]" and that "[t]he Commonwealth failed to present any evidence that it had prepared a writ or that the writ was issued. Therefore, the Trial Court's conclusion that the two periods were the result of 'administrative error' is wholly unsupported by the certified record." Appellant's Brief at 24 (emphasis omitted).

As a threshold matter, the Commonwealth contends Appellant waived this argument because he did not raise it in his Rule 600 motion. We disagree, as such argument ignores that the burden lies with the Commonwealth at a Rule 600 hearing to demonstrate, by a preponderance of the evidence, that Appellant was tried within

the prescribed time period or that the "Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control." *Commonwealth v. Bradford,* 616 Pa. 122, 46 A.3d 693, 701 (2012). The Commonwealth's assertion would place a defendant in an untenable position of having to anticipate the trial court's factual findings prior to the hearing in which such determinations were to be made. In any event, defense counsel did, in fact, note his exception to the trial court's findings regarding the two delays in question. N.T., 10/24/11, at 10. Accordingly, we conclude that Appellant has not waived this claim.

The Commonwealth does not dispute that the writs in question are not contained in the certified record. At the Rule 600 hearing, there was no inquiry into whether writs were issued by the court, nor whether the Commonwealth had sought the writs. There was also no inquiry into whether the Commonwealth acted with due diligence to ensure that Appellant was transferred to court from state custody.

The trial court's 1925(a) opinion contains only a cursory analysis of this matter. The trial court concludes that because Appellant had not been transferred to court from state custody, the delays in question were caused by 'administrative error.' However, there were no findings regarding the Commonwealth's efforts, or lack thereof, in securing Appellant's presence in court. Thus, it is unclear why Appellant was not transferred from state custody on those occasions. Based upon the record before us, it is plausible that these errors were a result of administrative error, either on the part of the trial court or the prison, but it is also plausible that the prosecutor's failure to seek writs from the

court caused the delays.[1]

In these circumstances, we conclude that the most prudent course of action is to remand this matter for a hearing for further consideration of the two delays that resulted from the failure to transfer Appellant to the trial court. If it is adequately demonstrated by the Commonwealth that they sought a writ from the trial court to secure Appellant's presence in court on each of those two occasions, no further inquiry is required, and the trial court should leave untouched its holding that no Rule 600 violation occurred. If the Commonwealth cannot provide evidence that it sought one or both of the writs, the trial court should then determine whether Appellant was tried within the time period prescribed by Rule 600. If he was not tried within the prescribed time period, the trial court should then determine whether the Commonwealth acted with due diligence in securing Appellant's presence and/or whether the failure to transfer Appellant was completely beyond the Commonwealth's control.

Appellant also asserts that there was insufficient evidence to convict him of PWID. Specifically, he claims this is because "the Commonwealth oddly (and saliently) failed to elicit evidence that the Ziplock bag recovered from Furentino was the same (or at least similar to) the baggie that Officer Ellingsworth had observed." Appellant's Brief at 28 (emphasis omitted). Thus, Appellant argues, "the evidence failed to establish beyond a reasonable doubt that the bag that Appellant tossed

was, in fact, the Ziplock bag later recovered from Furentino's person." *Id.*

Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000) (internal citations omitted).

The question Appellant presents is whether the jury could have reasonably inferred that the plastic baggie found in Furentino's possession was the same baggie that Appellant tossed into his vehicle. Viewing the evidence in a light most favorable to the Commonwealth, we hold that the inference was reasonable.

The circumstances of this case bear all the hallmarks of a narcotics transaction. After receiving an unknown amount of currency from Furentino, Appellant got out of the vehicle and walked to the fence to

---

1. The Commonwealth argues that the docket reflects that the reason Appellant was not transferred on May 9, 2011, was due to his transfer between state institutions. We recognize, as did the trial court during the Rule 600 hearing, that an administrative failure on the part of the court or the state prison to secure Appellant's presence should not be

held attributable to the Commonwealth for Rule 600 purposes. N.T., 10/24/11, at 10–11. However, the nature of Appellant's claim is that the Commonwealth never sought the appropriate writ to secure his presence in court in the first place. As it stands, the certified record does not contain any evidence of the Commonwealth's efforts in this regard.

retrieve a hidden baggie, and then returned to Furentino's vehicle and gave him the baggie. All of these activities were observed following Officer Ellingsworth's receipt of "*numerous* complaints of suspected narcotics activity" in the area from "non-anonymous sources." TCO at 1–2 (emphasis added). Officer Ellingsworth had significant experience in narcotics interdiction and testified that his observations were consistent with narcotics trafficking. Finally, Appellant was found in possession of a large amount of cash immediately following the observed transaction, and the recipient of the baggie was found in possession of a significant number of prescription pills. Given all these coinciding circumstances, there was more than sufficient evidence from which the jury could reasonably infer that the bag of pills found on Furentino had been delivered moments before by Appellant. This inference was not, in any sense, "in contradiction to the physical facts, in contravention to human experience [or] the laws of nature[.]" *Widmer*, 744 A.2d at 751.

Appellant also argues that the Commonwealth failed to present sufficient evidence that Appellant constructively possessed[2] the bag of pills found in Furentino's possession. This argument, in the circumstances of the present case, is resolved through our disposition of his first sufficiency argument. If it was reasonable to infer that the baggie found on Furentino was the same that was delivered to Furentino by Appellant, then the evidence was sufficient to demonstrate that Appellant was in actual possession of the narcotics. Here, the offense of PWID could be said to have occurred before Appellant parted with the baggie. Indeed, it is an absurd proposition to suggest that the Common-

wealth must prove that Appellant was in construction possession of contraband *after* it had been delivered to another person. Accordingly, we conclude Appellant's second sufficiency argument also lacks merit.

Next, Appellant claims the verdict was against the weight of the evidence. The trial court found this claim waived due to Appellant's failure to raise it in a post-sentence motion. Nevertheless, Appellant requests that we review the claim because the trial court reviewed the substance of his weight of the evidence claim in its Rule 1925(a) opinion. We agree with the trial court that Appellant has waived this matter, and we decline to address its merits.

[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa. R.Crim.P. 607; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood* [603 Pa. 92], 982 A.2d 483, 494 (Pa.2009).

*Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super.2012).

Appellant is mistaken in his belief that the trial court's addressing of the merits of his weight claim in its Rule 1925(a) opinion permits us to review the claim. "[A]ppellate review [of a weight claim] is limited to whether the trial court palpably abused its discretion...." *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003). Here, the trial court never 'ruled' on the issue and, therefore, it could not grant nor deny the claim at the time it was first raised by Appellant in his

---

**2.** "Possession can be proven by showing actual possession, *i.e.*, a controlled substance found on the appellee's person, or by showing

that the appellee constructively possessed the drug." *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132, 134 (1983).

concise statement. Although the court addressed the issue's merits in its Rule 1925(a) opinion, the trial court was, by that time, divested of jurisdiction to take further action in the case. *See* Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."). Thus, the trial court was never given the opportunity to provide Appellant with relief and, consequently, there is no discretionary act that this Court could review. Appellant's weight of the evidence claim is waived.

Next, Appellant contends that the trial court abused its discretion when "it barred Appellant from eliciting admissible and exculpatory evidence about Officer Ellingsworth's monetary compensation and experience testifying." Appellant's Brief at 34. Appellant argues that the testimony he sought to elicit during the cross-examination of Officer Ellingsworth would tend demonstrate the officer's bias or incentive to lie.

■■■■ It is firmly established that questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion. *See Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa.Super.2005). Abuse of discretion is not merely an error of judgment, but judgment that is manifestly unreasonable, such as where the law is not applied or when it is the result of partiality, prejudice, bias or ill will. *See id.* Here, although we conclude the court did not abuse its discretion· in barring Appellant from pursuing this line of inquiry during the cross-examination of Officer Ellingsworth, we do so for reasons that differ from those cited by the trial court.

■■■■ We disagree with the trial court's holding that Appellant's questions were not eliciting relevant evidence. The rules of evidence provide that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. The fact that a police officer is paid for his appearance in court is relevant to his credibility, just as the fee paid to an expert witness is relevant to that expert's credibility. *Cf. J.S. v. Whetzel*, 860 A.2d 1112, 1120 (Pa.Super.2004) ("It is proper to ask an expert witness his fee for testifying...."). Similarly, one's experience testifying in court is relevant to their credibility, as such experience is likely to affect that witness's demeanor or temperament. A witness's demeanor and temperament is a factor that we expect the trier of fact to consider when addressing that witness's credibility.[3]

---

**3.** Illustrative of this truism is the following passage cited by our Supreme Court in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), wherein the relevance of facts affecting a witness's demeanor or temperament is presumed:

The appellate court is limited to the mute record made below. Many factors may affect the probative value of testimony, such as age[,] ... intelligence, experience, occupation, demeanor, or temperament of the witness. A trial court or jury before whom witnesses appear is at least in a position to take note of such factors. An appellate court has no way of doing so. It cannot know whether a witness answered some questions forthrightly but evaded others. It may find an answer convincing and truthful in written form that may have sounded unreliable at the time it was given. A well[-]phrased sentence in the record may have seemed rehearsed at trial. A clumsy sentence in the record may not convey the ring of truth that attended it when the witness groped his way to its articulation. What clues are there in cold print ·to indi-

Nevertheless, we conclude that the trial court did not abuse its discretion as it would have acted within its discretion to exclude Appellant's line of inquiry pursuant to Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). The probative value of the testimony Appellant sought to elicit from Officer Ellingsworth was outweighed by the risk of undue prejudice to the Commonwealth and/or the danger that it would confuse or mislead the jury by delving into matters ancillary to Appellant's guilt or innocence.

Although not compelling precedent, we find persuasive the District of Columbia Court of Appeals' treatment of a similar issue in *Barnes v. United States*, 614 A.2d 902 (D.C.1992). In that case, the appellant argued "that the trial judge deprived him of his Sixth Amendment right to establish bias on the part of Officer Faison by precluding cross-examination about whether the officer received overtime pay for his testimony in court." *Id.* at 903. The trial court sustained an objection to that line of inquiry "on the ground that the proposed questioning lacked probative value and could only distract and confuse the jury." *Id.* The D.C. Appellate Court upheld the trial court's ruling, reasoning as follows:

> [The a]ppellant's claim of bias was anything but straightforward. As he concedes on appeal, the financial incentive he sought to establish bore only indirectly on Officer Faison's veracity at trial, for if—as defense counsel proffered— the officer was receiving time and a half

pay for his appearance in court, he would earn that pay for all overtime work whether it involved testifying in court or not. Moreover, he would receive it whether or not his courtroom testimony incriminated appellant. What counsel sought to establish was that there was a self-interested, indeed a corrupt, link between the fact of [the] appellant's arrest and Faison's testimony. He maintained that Faison was motivated from the beginning to arrest [the] appellant and other persons who were either "marginally" involved in drug sales or not involved at all, in order to secure for himself time in court as a witness and overtime pay in consequence. Counsel proffered (and expressed confidence he could elicit from the government's own police expert in the case) that police officers, particularly those from the Narcotics Task Force such as Faison, could earn "thousands of dollars a year" in overtime from their courtroom testimony. And this interest, counsel alleged, was linked directly to the potential innocence of defendants such as [the] appellant, because among all persons arrested on drug charges, those most likely to put the government to its proof at trial were defendants believing in their innocence, whereas factually guilty defendants were more likely to enter guilty pleas to lesser drug charges before trial in order to avoid mandatory minimum sentencing.

> This theory of bias, as the trial judge recognized, rested on a series of assumptions unsupported by any evidentiary proffer. The ultimate assumption, of course, was that an officer like Faison would jeopardize his career (and risk

cate where the truth lies? What clues are there to indicate where the half-truth lies? R. Traynor, The Riddle of Harmless Error 20–21 (1970).

*Story,* 383 A.2d at 168.

civil if not criminal liability) by falsely arresting innocent persons for the future gain of overtime pay. The underlying factual assumption was that most "guilty" drug defendants would plea bargain (hence offer little promise of remuneration for Faison) while defendants innocent in fact would commonly insist on their right to trial. Appellant proffered no evidence at all about the frequency of guilty pleas in drug cases, nor about the reasons (assuming these could be established empirically) why individual defendants go to trial—i.e., because they truly believe themselves innocent; or, innocence aside, because they are confident they can beat the government's case, perhaps by a motion to suppress; or simply because they have not been offered a plea to a reduced charge because of recidivism or other reasons subsumed under prosecutorial discretion. In particular, as the trial judge noted and defense counsel agreed, the government commonly "wired" plea offers in the case of jointly arrested defendants such as appellant and Baum, so much so that—in this case—until the very day before trial when Baum pled guilty to the charged offense, Officer Faison's attendance at trial was not contingent on appellant's decision to stand trial. Yet the theory of bias was that the officer had to cast his net broadly, arresting the guilty and innocent alike, to insure that at least one.among codefendants would proceed to trial.

*Id.* at 903–04 (footnote omitted).

Similarly, Appellant's theories regarding Officer Ellingsworth's lack of credibility rest on equally nebulous assumptions. To place whatever incentives Officer Ellingsworth's compensation gave him to lie in their proper context would require a significant digression of Appellant's trial into a public hearing into the numerous and complex aspects of the criminal justice system that affect whether a case is ultimately resolved at a trial. We conclude that such an inquiry would inevitably confuse or distract the jury from their task of adjudicating Appellant's guilt or innocence. Moreover, permitting Appellant to raise these matters without providing the jury with the greater context in which an officer's potential motives to lie may arise would render the admitted testimony unduly prejudicial to the Commonwealth. Accordingly, we conclude that the trial court did not abuse its discretion when it barred Appellant from pursuing this line of inquiry.

■ Finally, our review of the record has revealed that the trial court imposed a mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508(a)(2)(ii). It is also apparent from the record that the facts that permitted application of that mandatory sentence were not determined by the factfinder nor proven beyond a reasonable doubt. Consequently, the application of the mandatory minimum sentence in this case constituted an illegal sentence in violation of *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

> According to the *Alleyne* Court, a fact that increases the sentencing floor is an element of the crime. Thus, it ruled that facts that mandatorily increase the range of penalties for a defendant must be submitted to a fact-finder and proven beyond a reasonable doubt. The *Alleyne* decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard.

*Commonwealth v. Watley,* 81 A.3d 108, 117 (Pa.Super.2013) (footnote omitted).

Appellant has not preserved any challenge to the constitutionality of 18 Pa.C.S. § 7508(a)(2)(ii). Nonetheless, *Alleyne* necessarily implicated Pennsylvania's legality of sentencing construct since it held that it is improper to sentence a person to a mandatory minimum sentence absent a jury's finding of facts that support the mandatory sentence. Application of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits. Legality of sentence questions are not waivable and may be raised *sua sponte* by this Court.

*Watley,* 81 A.3d at 117–18 (footnotes and citations omitted). Accordingly, we conclude Appellant's sentence, imposed pursuant to 18 Pa.C.S. § 7508(a)(2)(ii) and in violation of *Alleyne,* was illegal and must be vacated.

Judgment of sentence ***vacated.*** Case ***remanded*** for further proceedings consistent with this opinion.