J-A23003-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
  :       PENNSYLVANIA
          Appellee   :
  :
     v.   :
  :
JACKIE MASON,   :
  :
          Appellant   :   No. 778 WDA 2013

Appeal from the Judgment of Sentence April 3, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-CR-0010462-2012

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED SEPTEMBER 09, 2014**

Jackie Mason ("Mason") appeals from the April 3, 2013 judgment of sentence entered by the Allegheny County Court of Common Pleas. Specifically, Mason appeals the trial court's denial of his motion to suppress a gun found in his vehicle during a traffic stop. Upon review, we affirm.

The trial court summarized the facts adduced at the suppression hearing as follows:

> On May 24, 2012, plain clothes narcotics detectives of the City of Pittsburgh Police Department were patrolling Shadeland Avenue in the Marshall-Shadeland section of the North Side of the City of Pittsburgh in an unmarked police car. (T.R. 4). While driving behind a car driven by [Mason], the detectives observed that the taillight on the driver[']s side of [Mason]'s vehicle was completely burned out or not illuminated. The detectives initiated a traffic stop at the intersection of Woodland and Shadeland Avenues. (T.R. 4).

Detective Scott Love, along with three (3) other plain clothes detectives, approached [Mason]'s car. (T.R. 9). Each detective had his badge displayed around his neck at the time of the encounter with [Mason]. (TR. 7). All of their weapons were holstered and not drawn. (T.R. 12-13). As he approached the vehicle, Detective Love noted that there was a bullet hole in the front windshield, two (2) bullet holes in the passenger side of the car, and that the passenger side window was shattered. (T.R. 5, 9). Detective Love asked [Mason] to produce his license, registration and proof of insurance. (T.R. 5, 9). As [Mason] began to reach around to retrieve those items, Detective Love asked him if there were any weapons in the car that he (Detective Love) should know about. (T.R. 5-6, 10). [Mason] responded that there were no weapons, but he appeared to be visibly shaking, sweating and nervous. (T.R. 6, 10). Because of how nervous [Mason] was, Detective Love asked him if he could search the car, and [Mason] said 'go ahead.' (T.R. 6, 10). As [Mason] was exiting the vehicle at the request of the officers so that a search could be performed, [Mason] told Detective Love that he had lied and that he had a gun under his seat. (T.R. 6, 10-11). Detective Love looked under the driver's seat and could see a gun, which he recovered. (T.R. 7, 11). The gun was a nine millimeter (9 mm) black Ruger. (T.R. 7).

Detective Love stated that he asked [Mason] about the presence of a weapon because of the visible bullet holes in [Mason]'s vehicle and the way that he was behaving, i.e., sweating, shaking and being very nervous. (T.R. 8, 10). [Mason] had indicated to the officers that he had received the bullet holes in the East Commons housing complex, a high crime area that the officers were familiar with and in which they had made numerous gun and drug arrests. (T.R. 8). Given this history, Detective Love believed that [Mason] might have a gun in his vehicle for protection. (T.R. 8).

> At the suppression hearing, [Mason] argued that he was detained at the time of the traffic stop, that his consent to search was not voluntary under the circumstance[s] and that he should have been Mirandized before he was asked about the presence of the gun. The Commonwealth argued that the consent to search was voluntary, the statement made was a spontaneous utterance, and that the detectives were permitted to ask [Mason] to step out of the vehicle for officer safety. This court denied [Mason]'s suppression motion, finding that [Mason]'s consent to search was voluntary and that the statement made by [Mason] was a spontaneous utterance. Following the denial of the suppression motion, [Mason] proceeded to a stipulated non-jury trial, after which this court found him guilty of both charges and sentenced him to one (1) year of probation and the payment of the summary fine.

Trial Court Opinion, 12/19/13, at 2-4.

Mason filed a timely notice of appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). He raises one issue for our review: "Did the trial court err in denying [] Mason's motion to suppress where, under the totality of the circumstances, [] Mason's consent was involuntarily obtained and police independently lacked reasonable suspicion to believe [] Mason was armed and dangerous?" Mason's Brief at 4.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v.***

*Thompson*, 93 A.3d 478, 484 (Pa. Super. 2014) (citation omitted). We are not bound by the trial court's legal conclusions, but must apply the law to the supported facts found by the trial court. *Id.* The trial court's conclusions of law are subject to our plenary review. *Id.*

The trial court found that the police conducted a lawful traffic stop and Mason voluntarily gave the police consent to search his vehicle. Trial Court Opinion, 12/19/13, at 10. Mason asserts that the circumstances attendant to his interaction with police – the number of detectives present, that each detective was armed, the stop occurred at night, the investigative detention was ongoing at the time of the request to search his car, and the detectives did not inform Mason that he could decline their request to search his vehicle – rendered involuntary his consent for police to search his vehicle pursuant to, *inter alia*, this Court's decision in **Commonwealth v. Acosta**, 815 A.2d 1078 (Pa. Super. 2003) (*en banc*). Mason's Brief at 18-19. Mason further argues that the police lacked reasonable suspicion to search the car for weapons and therefore, the gun recovered during Detective Love's search of Mason's car should have been suppressed. *Id.* at 22-23.

We need not decide the issue of the voluntariness of Mason's consent because the record reflects that the police were justified in conducting a protective search of the car pursuant to **Michigan v. Long**, 463 U.S. 1032 (1983), and **Commonwealth v. Morris**, 644 A.2d 721 (Pa. 1994), which permit

the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, […] if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. '[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'

*Long*, 463 U.S. at 1049–50 (quoting *Terry v. Ohio*, 329 U.S. 1, 21 (1968)); *Morris*, 644 A.2d at 421.

The Commonwealth points us to *Commonwealth v. Buchert*, 68 A.3d 911 (Pa. Super. 2013), *appeal denied*, 83 A.3d 413 (Pa. 2014), to support a finding that the police in the case at bar had the requisite reasonable suspicion to conduct a protective search of Mason's vehicle. Commonwealth's Brief at 11-13. In *Buchert*, police stopped a vehicle with a broken taillight. *Buchert*, 68 A.3d at 912. As they approached the car, the officers saw the defendant, seated in the front passenger seat, bend forward and reaching under his seat. Police did not see the defendant's hands or anything in them. The defendant and the driver were cooperative with the police and kept their hands visible at their direction. According to police, "the defendant appeared nervous as they were talking to him, and [] [the officer] could see the defendant's heavy breathing and rapid heartbeat." *Id.* The officers ordered the two occupants to exit the car. A frisk of the

defendant did not reveal any contraband. Thereafter, the officer performed a protective search of the area of the vehicle within the defendant's immediate control, revealing a .22 caliber revolver. *Id.* Although the officer testified that the stop occurred in a high narcotics area, the trial court did not find that testimony to be credible. *Id.*

The defendant filed a motion to suppress the firearm, which the trial court granted, finding the police lacked "probable cause to search the passenger area." *Id.* at 913. The Commonwealth appealed, and this Court reversed, concluding:

> The combination of [the defendant's] furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and the night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that Appellee might gain immediate control of a weapon.

*Id.* at 916-17.

The record reflects that the stop in question occurred at 12:22 a.m. during Detective Love's routine patrol, and that he was "assigned to the highest crime areas within the City of Pittsburgh." N.T., 4/13/13, at 3-4; Affidavit of Probable Cause, 5/24/12, at 2. As Detective Love approached the car, he observed that there was a bullet hole in its windshield, two bullet holes in the passenger side of the car, and its passenger-side window was shattered. N.T., 4/13/13, at 5. Prior to Mason providing his license and registration, Detective Love asked him if there were any weapons in the

vehicle, as he routinely did during traffic stops. *Id.* at 5-6, 10. Mason said there were no weapons in the car. *Id.* at 6. Mason was shaking, sweating, and visibly nervous. *Id.* Despite Mason's statement to the contrary, Detective Love was nonetheless concerned that there were weapons in the car because when he asked about the bullet holes in the car, Mason "said that he had just gotten shot at down at 255 East Ohio Street. It's a housing complex that's known to me as a high crime area. I've made numerous gun [and] drug [] arrests."[1] *Id.* at 8. Detective Love testified that based on the information he had before him, he believed Mason might have a gun in the car for protection. *Id.*

Thus, the specific facts articulated by Detective Love that led him to believe Mason might have a weapon in the car included: a late-night traffic stop in a high crime area; the car was riddled with bullet holes from a shooting of which occurred in another high crime area; and Mason was visibly nervous and sweating during his interaction with the police. Unlike the defendant in *Buchert*, Mason did not make furtive movements; however, the additional factors present in the case at bar include the

---

[1] Mason challenges the support in the record for the conclusion that Mason informed the police about the source of the bullet holes prior to the search. Mason's Brief at 23. In his testimony, Detective Love indicated that his concern that there was a weapon in the car stemmed in part from the presence of the bullet holes and Mason's statement "that he had just gotten shot down at 255 East Ohio Street […] known to me as a high crime area." N.T., 4/13/13, at 8. It is clear from this testimony that Detective Love became aware of this information prior to conducting the search of Mason's car.

presence of bullet holes in the vehicle, Mason's statement that he was shot at in a high crime area, and his presence in yet another high crime area at the time of the stop. These factors, coupled with Mason's nervousness during the traffic stop, are sufficient to warrant a reasonably prudent man to believe that his safety was in danger. **See Long**, 463 U.S. at 1049–50; **Morris**, 644 A.2d at 421; **see also Buchert**, 68 A.3d at 917.

The trial court's factual findings are supported by the record. Although the trial court did not deny Mason's motion to suppress based upon a finding that the police had a reasonable suspicion to suspect that Mason had a firearm in the car, its decision to deny suppression was correct. We may affirm a trial court's decision regarding a motion to suppress on any ground, "even where those grounds were not suggested to or known by the trial court." **Commonwealth v. Gatlos**, 76 A.3d 44, 62 n.14 (Pa. Super. 2013); **see also Thompson**, 93 A.3d at 484 (we are not bound by the trial court's legal conclusions, but must apply the law to the supported facts found by the trial court). We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2014

- 8 -