J-S74017-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KHALIL R. WHITE, | : | |
| | : | |
| Appellant | : | No. 110 EDA 2014 |

Appeal from the Judgment of Sentence May 14, 2012,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0005013-2011

BEFORE:  BENDER, P.J.E, DONOHUE and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　　**FILED DECEMBER 15, 2014**

Khalil R. White ("White") appeals from the judgment of sentence entered following his convictions of robbery, theft by unlawful taking and conspiracy.[1]  Having found no merit to the issues White raises on appeal, we affirm.

The trial court summarized the facts underlying White's convictions as follows:

> On October 21, 2010, [White], his cousin Rashieda White, Latif Miller and others were inside apartment 3A at 3147 North 16th Street in Philadelphia.  At 10:45 pm, Rashieda White ordered food from Bravo's Pizza.  Mohamed El-Amzali was the delivery driver for Bravo [sic] Pizza, who delivered the food to 3147 North 16th Street.  When he arrived at the building, El-Amzali called Rashieda White, who answered and told him she was coming.  El-Amzali waited approximately ten minutes and called her again.

---

[1] 18 Pa.C.S.A. §§ 3701, 3921, 903.

*Retired Senior Judge assigned to the Superior Court.

This time White requested that El-Amzali bring the food to the front door of the building. El-Amzali exited his vehicle with the food and approached the front door of the apartment building.

When El-Amzali got to the building's front door to deliver the food, Latif Miller and [White] were waiting for him and opened the doors. Miller had a gun in his left hand, and [White] covered his face with a dark piece of clothing. When the door was opened, neither Miller nor [White] said anything to El-Amzali. Instead, Miller grabbed the food with his right hand and fired one shot at El-Amzali. The bullet struck El-Amzali in the stomach, and he immediately collapsed. [White] and Miller turned and fled down the hallway and into apartment A3. [White] and Miller jumped through a rear window and fled the building.

El-Amzali immediately called the police. After [White] and Miller fled the scene, Rashieda White and several other girls exited apartment 3A. They entered the hallway and told El-Amzali to leave. Rashieda White kicked the fired cartridge casing down the hallway before she left the scene.

***

Officer Brian Graves was the first police officer to arrive on the scene. Officer Graves observed El-Amzali rolling on the ground in the hallway and noticed that he was shot and bleeding from his stomach area. Officer Graves helped El-Amzali into an ambulance, which transported him to Temple Hospital. El-Amzali received treatment for six days in the hospital. He has a large permanent scar from approximately midway on his sternum down to just below his belly button. … .

Trial Court Opinion, 5/19/14, at 1-3 (citation to notes of testimony omitted).

Following a three-day jury trial, White was convicted of the offenses listed above. He was subsequently sentenced to a total of five to ten years of incarceration. White filed a post-sentence motion, which the trial court denied. This timely appeal follows, in which White presents two issues for our review.

In his first issue, White argues that there was insufficient evidence to support his convictions. We review this issue mindful that,

> [w]hen evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the fact[-]finder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the fact[-]finder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010).

White concedes that there was sufficient evidence to establish that he was present during the robbery of El-Amzali, but argues that there was no direct or circumstantial evidence to establish that he participated in the robbery. White's Brief at 11-12.[2] White characterizes his convictions as

_____

[2] White expressly forgoes arguing that the evidence was insufficient as to any particular element of any offense of which he was convicted and argues

- 3 -

based upon speculation and conjecture, and therefore impermissible. *Id.* at 13-14. We do not agree.

The record in the present case contains plentiful evidence that White was a participant in the robbery of El-Amzali. At trial, El-Amzali testified that he was making a delivery to 3147 North 16th Street on the night in question. N.T., 3/7/12, at 27. When he arrived, he called the woman who placed the order and she asked him to come into the building. *Id.* at 28. As he entered the building to make the delivery, two men were standing in the hallway and opened the interior door to the apartment building for him. *Id.* at 28, 58. The first man was holding a gun in his extended left hand, and the other man stood just behind him with a cloth covering his face below the eyes. *Id.* at 29-30. The man with the gun shot El-Amzali and took the food from him. *Id.* at 31. Both men then ran into apartment A3, which was Rashieda's apartment. *Id.* at 31, 37. Tina Allen ("Allen") testified that she lives in apartment A1. N.T., 3/6/12, at 19. At approximately 10:45 that evening, she heard a gunshot and looked out of her door. *Id.* In a statement to the police immediately following the incident, Allen stated that when she looked out of her door, she saw White run into A3, Rashieda's apartment. *Id.* at 36-37. Allen stated that she had seen White almost every day and that she had known him for about ten years at the time. *Id.*

only that the evidence was insufficient to prove anything other than his mere presence at the scene of the crime. White's Brief at 11.

at 36-37. She identified White in a photo array at the time she gave her statement to the police. *Id.* at 38. Additionally, Rashieda admitted that she called for the delivery of food so that White and Miller could rob the deliveryman. N.T., 3/7/12, at 141. After the shooting, Miller and White re-entered Rashieda's apartment and exited through a window in her apartment. N.T., 3/7/12, at 8; N.T., 3/6/12, at 20; N.T., 3/7/12, at 31.

This evidence - most notably, White's presence with Miller at the threshold of the building, his efforts to conceal his identity, his immediate flight with Miller through the window and Rashieda's admission as to the conspiracy to rob the deliveryman – is sufficient to support the finding that White was a participant in the events that occurred on the night in question, and not merely present at the scene when a crime was committed by others.

White relies on the Pennsylvania Supreme Court's decision in *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993), but this reliance is misplaced. In *Karkaria*, the defendant was charged with raping his step-sister between April and September 1984. At trial, the victim testified that the defendant assaulted her **only** when he acted as her babysitter, beginning in 1981. The victim and the defendant testified, however, that by April 1984, the defendant was no longer acting as the victim's babysitter. There was absolutely no evidence to support a finding that the defendant assaulted the victim during the period of time upon which the charges were based. Accordingly, the Supreme Court concluded that the evidence was

insufficient to support the verdict. *Karkaria*, 625 A.2d at 1171-72. In contrast, as recounted above, in this case there is ample evidence to support the conclusion that White participated in the robbery. As such, we reject White's claim.

In his second issue, White argues that the verdicts are against the weight of the evidence.[3]

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the

---

[3] White preserved this claim for appeal by raising it his post-sentence motion. *See Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) ("[A] weight of the evidence claim must be preserved … in a post-sentence motion[.] … Failure to properly preserve the claim will result in waiver."); Pa.R.Crim.P. 607.

> foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in the original) (citations omitted).

Accordingly, we are mindful that as we review White's claim, we are not passing on the underlying question of whether the verdicts were against the weight of the evidence, but rather we are considering whether the trial court abused its discretion in denying his motion for a new trial based upon his claim that the verdict was against the weight of the evidence. We are focused, therefore, on evidence that the trial court's ruling is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id.*

White fails to appreciate the standard and scope of our review. He frames his argument in terms of the jury's failure to make certain findings, and does not present any argument as to how he believes the trial court abused its discretion in denying his post-sentence motion. White directs his entire argument to the underlying question of whether his convictions are against the weight of the evidence. As stated above, this is not the question before us for review.

White has failed to provide us with relevant argument relative to our standard of review, and this Court will not develop an argument on his behalf. ***See Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. 2006). In addition, however, our independent review of the record provides us with ample support for the conclusion that the trial court did not abuse its discretion in deciding that the verdicts in this case were not against the weight of the evidence. We therefore find no merit to White's claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2014