J-S70017-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL SHIELDS, | : | |
| | : | |
| Appellant | : | No. 1978 EDA 2014 |

Appeal from the Judgment of Sentence June 9, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0001658-2013

BEFORE:  DONOHUE, LAZARUS and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED DECEMBER 04, 2015**

Michael Shields ("Shields") appeals from the judgment of sentence entered following his convictions of firearms not to be carried without a license, tampering with public records, criminal conspiracy, unsworn falsifications to authorities and violations of the Uniform Firearms Act ("VUFA").[1]  We affirm.

In January 2012, Shields convinced his fiancée, Listeree Brickey ("Brickey") to purchase a gun.  Shields told Brickey that he would pay for the gun, but that she had to use her debit card to buy it.  On March 1, 2012, Brickey purchased a Hi-Point JHP .45 caliber gun online, which was shipped to a store for her to pick up.  When filling out the requisite state and federal paperwork at the gun dealer's store, Brickey falsely stated that she was not

---

[1] 18 Pa.C.S.A §§ 6106(a)(1), 4911(a)(1), 903, 4904(a)(1), 6111(g)(1),(4).

*Retired Senior Judge assigned to the Superior Court.

buying the firearm for another person. This occurred two more times in May 2012, with Shields providing money to Brickey to purchase the firearms, and with Brickey denying that she was buying them for another person.

In July 2012, Antonio Pickney was arrested and found in possession of the .45 caliber gun Brickey purchased on March 1, 2012. In August 2012, Manuel Santiago, an agent with the Attorney General's Gun Violence Task Force, contacted Brickey regarding this firearm and asked to meet with her. When Brickey mentioned this up-coming meeting to Shields, Shields told her that if Agent Santiago asked if she lived with anyone, she should not use his real name, but refer to him by a particular fake name. In her meeting with Agent Santiago, Brickey stated that she did not know Antonio Pickney and when asked if she lived with anyone, she gave Agent Santiago the fake name designated by Shields. During the meeting, Agent Santiago asked Brickey if they could go to her apartment and to look for her guns. Brickey contacted Shields while en route to their apartment and told Shields that she and Agent Santiago were coming to their home to look for the guns she had purchased. Shields instructed her to tell Agent Santiago that she had purchased the guns as gifts for her father. Agent Santiago and Brickey could not find any of the guns in Brickey's and Shields' home. Subsequently, Shields told Brickey to file a police report for the .45 caliber firearm that was recovered from Antonio Pickney. On this police report, Brickey identified Shields by his real name as a cohabitant of her home.

Brickey eventually admitted to Agent Santiago that she lied to him about Shields' identity and that she did not buy the guns for her father, but that she had given them to Shields. Agent Santiago arrested Brickey on multiple VUFA charges for acting as a straw purchaser for firearms. While she was in prison on these charges, Shields wrote to Brickey, telling her to say that she bought the guns for protection and as gifts for her aunt and mother. Brickey turned these letters over to the Philadelphia District Attorney's Office, with whom she was cooperating, and also agreed to record her phone calls with Shields. In these calls, Brickey tried to convince Shields to get the guns back, and Shields indicated that he would need $250 to do so. In December 2012, Shields told Brickey that he succeeded in getting one of the guns back and that he would deliver it to her mother's house. Brickey informed Agent Santiago of this and Agent Santiago retrieved the gun from Brickey's mother's house. Agent Santiago subsequently placed Shields under arrest.

Following a jury trial, Shields was convicted of the above-mentioned crimes. He was sentenced to an aggregate term of six and a half to thirteen years in prison. This timely appeal follows, in which Shields raises only one question, "[w]hether the evidence was insufficient to support all of [his] convictions, which were based on a theory of conspiracy liability, because the evidence was insufficient to sustain the conspiracy conviction?" Shields' Brief at 4.

Our standard of review for a claim challenging the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Yong*, 120 A.3d 299, 311 (Pa. Super. 2015) (quoting *Commonwealth v. Pappas*, 845 A.2d 829, 835-36 (Pa. Super. 2004)).

As stated above, Shields alleges that the evidence was insufficient to support his conspiracy conviction, and therefore, none of his convictions can stand because they all are premised on his participation in a conspiracy. Shields' Brief at 8.

Section 903 of the Crimes Code defines conspiracy as follows:

**(a)** **Definition of conspiracy.**--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). Furthermore,

[o]nce the trier of fact finds that there was an agreement, and that the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act. *See Commonwealth v. Wayne*, [] 720 A.2d 456, 463–64 ([Pa.] 1998).

The essence of a criminal conspiracy, which distinguishes it from accomplice liability, is an agreement between the co-conspirators. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002). However, "[a]n explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998) (en banc) (citations omitted). Therefore, where the conduct of the parties indicates that they were acting in concert with a corrupt purpose, the existence of a criminal conspiracy may properly be inferred. *Commonwealth v. Snyder*, [] 483 A.2d 933, 942 ([Pa. Super.] 1984). Non-exclusive circumstances that may establish proof of a

conspiracy include: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) participation in the object of the conspiracy. ***Commonwealth v. Swerdlow***, [] 636 A.2d 1173, 1177 ([Pa. Super.] 1994).

***Yong***, 120 A.3d at 312.

We begin with the definition of conspiracy:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

"A conviction for criminal conspiracy … is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Lambert***, 795 A.2d 1010, 1016 (Pa. Super. 2002) (en banc) (citation omitted).

Shields argues that "if Brickey believed that she was telling the truth [on the paperwork required for the purchase of the guns], then it necessarily

follows that she did not believe that she was involved in a criminal enterprise." Shields' Brief at 11. He concludes that "if she was not a knowing participant in a criminal conspiracy … then it is legally impossible for a criminal conspiracy to have been formed." *Id.* We agree with Shields that an agreement between the actors is an essential element of conspiracy. *See* 18 Pa.C.S.A. § 903. However, Shield's argument hinges on the acceptance of Brickey's claim that she did not share an agreement with Shields to act as a straw purchaser for firearms that he would later sell.[2] This argument speaks to a claim that the conviction was against the weight of the evidence, not that the evidence was insufficient to support the conviction. *See Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (holding that argument that the finder of fact should have credited a witness' testimony goes to the weight of the evidence, not the sufficiency of the evidence). "[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014)

---

[2] As recounted above, the evidence establishes that on three occasions, Brickey purchased firearms for Shields and at his request; that she lied on the federal and state documentation that she was required to fill out; that she lied to Agent Santiago about Shields' identity and falsely claimed that she gave two of the guns to her estranged father. The jury was free to reject Brickey's explanations for her actions, *see Commonwealth v. Pruitt*, 951 A.2d 307, 313 (Pa. 2008), which it obviously did.

(internal citations omitted); **see also** Pa.R.Crim.P. 607. The record reveals that Shields' only post-sentence motion was a request for reconsideration of his sentence and that he did not raise this claim prior to sentencing in any manner. **See** Trial Court Order, 6/16/14; N.T., 6/9/14, at 2-8. Accordingly, Shields has not preserved this challenge for appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2015