J-S58020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JODY L. KENNY, | |
| Appellant | No. 71 WDA 2014 |

Appeal from the Judgment of Sentence Entered July 5, 2012
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0003920-2010

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 26, 2014**

Appellant, Jody L. Kenny, appeals from the judgment of sentence of 2-4 years' incarceration imposed following her conviction on three counts of delivery of a controlled substance. After careful review, we vacate the judgment of sentence and remand for resentencing.

The trial court summarized the facts adduced at trial as follows:

> Detective Fontana of the Greensburg Police Department testified that he conducted surveillance on a residence as part of an investigation headed by Detective Vernail. The first transaction took place on May 6, 2009. The occupants of a first floor apartment located at 135 East Pittsburgh Street were [Appellant] and her Husband. The detective watched as the confidential informant ["C.I."], Mr. Warren, walked onto [Appellant]'s porch; [Appellant] was in the doorway and they talked for a minute. Then, the [C.I.] went back to Detective Vernail's car. Fontana had a good vantage point during the

---

[*] Retired Senior Judge assigned to the Superior Court.

surveillance and was able to see [Appellant]'s face. This type of encounter took place on three separate occasions and all of the transactions occurred under surveillance … and at the same location. Essentially, the [C.I.] went up onto the porch, they briefly spoke, and then he handed [Appellant] money and she handed him a package and he went off the porch and back to Detective Vernal. Each time, Fontana was conducting surveillance and thus he was able to positively identify [Appellant].

Thomas Warren, the [C.I.], testified that he came into contact with Detective Jerry Vernail and agreed to cooperate with him in his efforts to combat drug trafficking in the city of Greensburg. He knew of the East Pittsburgh street address as the residence of a drug distributor. He was aware of this fact because his ex-girlfriend would purchase drugs from [Appellant].

According to Mr. Warren[,] the narcotic pill he was purchasing was called opana. The cost per pill was either $15.00 or $20.00. He made arrangements over the phone with [Appellant] to purchase the narcotic pills. Mr. Warren was searched both before and after the purchases from [Appellant]. He provided all the cash the detective gave him to [Appellant] and he gave the detective all the opana that she had given to him on each occasion. The third and final transaction took place on June 3, 2009.

Trooper Gregg Norton and Detective Jerry Vernail were involved in surveillance of the three drug transactions. Each time the same scenario unfolded. The [C.I.] would go up onto [Appellant]'s porch. Then he handed [Appellant] money and she handed "something" back; that something being the opana narcotic pills.

Analysis of the pills was conducted by Maxine Oleyar, a Forensic Scientist II with the Pennsylvania State Police Crime Lab at Greensburg. Her analysis of the pills indicated that they were oxymorphone, a Schedule II Controlled Substance (the generic term being opana).

Trial Court Opinion, 12/4/13, at 2-4 (internal citations omitted).

On December 9, 2011, following a jury trial, Appellant was convicted of three counts of delivery of a controlled substance (Delivery), 35 P.S. § 780-113(a)(30). Appellant was sentenced on July 5, 2012, to an aggregate term of 2-4 years' incarceration. She did not initially file a post-sentence motion or a direct appeal. However, on July 29, 2013, the trial court entered an order reinstating her direct appeal rights *nunc pro tunc*. Appellant then filed a post-sentence motion on August 8, 2013. That motion was denied on December 4, 2013. The trial court also issued an opinion on that date setting forth its reasons for dismissing Appellant's post-sentence motion. Appellant then filed a timely notice of appeal on January 2, 2014.

On January 27, 2014, Appellant complied with the trial court's order for a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court then issued an order on January 31, 2014, directing this Court's attention to the trial court's December 4, 2013 opinion as dispositive with respect to all the issues raised by Appellant in her Rule 1925(b) statement. Appellant now presents the following questions for our review:

I.   Whether the trial court erred by denying … Appellant's post-sentence motion for a judgment of acquittal based upon a verdict contrary to the sufficiency of the evidence, for the reason that there was insufficient evidence to support the guilty verdicts for the offense of [Delivery] at counts 1, 2, and 3 of the Commonwealth's information?

II.  Whether the trial court erred by denying … Appellant's post-sentence motion for a new trial, for the reason that the guilty verdicts for the offense of [Delivery] at counts 1, 2, and 3 of the Commonwealth's information were contrary to the weight of the evidence?

III. Whether the trial court erred by denying … Appellant's post-sentence motion for a new trial, for the reason that trial counsel was ineffective by failing to move for a mistrial on the basis that certain members of the jury demonstrated that they were biased against … Appellant?

Appellant's Brief at 7-8. We will address these claims *ad seriatum*, and conclude our review with a *sua sponte* examination of the legality of Appellant's sentence.

### *Sufficiency*

Appellant's first claim presents a challenge to the sufficiency of the evidence underlying her conviction for three counts of Delivery. Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

In her brief, Appellant cites the appropriate standard of review, as well as the statute defining her Delivery offenses, 35 P.S. § 780-113(a)(30). However, her argument in support of the sufficiency claim is merely a bald assertion that the evidence is insufficient:

Appellant argues that the evidence which was presented at trial was insufficient to establish that she delivered a controlled substance, namely [o]pana pills, to the Confidential Informant on any of the three (3) criminal incident dates in question. It is maintained that the Commonwealth did not present sufficient evidence to sustain a conviction for the [Delivery] offenses charged in Counts 1, 2 and 3 of the Commonwealth's Information.

Appellant's Brief at 13-14.

This is the functional equivalent of no argument at all. Moreover, Appellant does not cite to any authority in support of the proposition that the evidence was insufficient in this case, *see* Pa.R.A.P. 2119(b) ("Citation of authorities"), nor is there any reference made to the record in support of her claim, *see* Pa.R.A.P. 2119(c) ("Reference to record"). Accordingly, Appellant's sufficiency claim is meritless.

### *Weight of the Evidence*

Appellant also asserts that the jury's verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The

propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion. This court summarized the limits of discretion as follows:

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

Appellant's weight claim is premised upon the fact that she testified that she never sold her medications to the C.I., Thomas Warren. Appellant's Brief at 14. She also testified that "she did not get along with Mr. Warren, and that it would have been possible for him to have stolen some of her pills on the occasions when he visited her residence. *Id.* at 15. Thus, Appellant argues, "the [j]ury's verdict of guilty was against the weight of the evidence to the degree that it shocks one's sense of justice." *Id.*

Appellant's weight claim amounts to no more than the assertion that the jury should have believed her testimony over that of the Commonwealth's witnesses. However, it has long been established that

> [a] new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. Nor should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party.

- 6 -

*Eisert v. Jones*, 182 A.2d 717, 720 (Pa. 1962).

We ascertain no abuse of discretion in the trial court's denying of Appellant's motion for a new trial based upon her assertion that the verdict was against the weight of the evidence. Accordingly, Appellant's weight of the evidence claim does not entitle her to relief.

### *Ineffective Assistance of Counsel*

Appellant's third claim posits that the trial court abused its discretion when it denied Appellant's motion for a new trial premised upon trial counsel's ineffectiveness. We are precluded from reviewing this claim under the general rule espoused by our Supreme Court in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). Therein, our Supreme Court held that, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738. Recently, in *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013), our Supreme Court recognized the existence of only two exceptions to the rule announced in *Grant*. First, a trial court may address ineffectiveness claims where such claims are "apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice." *Holmes*, 79 A.3d at 563. Second,

> with respect to other cases and claims … where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his

entitlement to seek PCRA[1] review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Holmes*, 79 A.3d at 563-64 (footnote omitted).

Appellant has not asserted the applicability of either of these exceptions, nor is there anything in the record that suggests their applicability. Accordingly, we decline to address Appellant's ineffectiveness claim at this time. However, we do so without prejudice to her ability to raise it in a future PCRA petition.

### *Illegal Sentence*

Following Appellant's conviction for three counts of Delivery in this case, the Commonwealth sought imposition of mandatory minimum sentences for two of those counts pursuant to 18 Pa.C.S. § 7508. *See* Commonwealth's Notice to Defendant of Mandatory Minimum Sentence ("Notice"), 1/17/12, at 1-2. The trial court indicates that these mandatory minimums were applied in forming Appellant's sentence. TCO, at 1. From our review of the trial transcripts, we can ascertain that the jury empaneled in this case did not make the determination regarding whether the facts adduced at trial supported the imposition of the mandatory minimum sentences imposed by the court. *See* N.T., 12/8/11-12/9/11, at 198 (wherein the trial court described the content of the verdict slip to the jury).

_____

[1] Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.*

This indicates that the mandatory sentences imposed in this case were illegal.

"A challenge to the legality of the sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction." *Commonwealth v. Robinson*, 931 A.2d 15, 19–20 (Pa. Super. 2007) (*en banc*). Moreover, "[a]n illegal sentence … may be reviewed *sua sponte* by this Court." *Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa. Super. 1998).

In *Commonwealth v. Thompson*, 93 A.3d 478 (Pa. Super. 2014), this Court discovered that the record "revealed that the trial court imposed a mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508(a)(2)(ii)." *Id.* at 493. It was also apparent that "the facts that permitted application of that mandatory sentence were not determined by the fact-finder nor proven beyond a reasonable doubt." *Id.* Thus, the *Thompson* Court held that "the application of the mandatory minimum sentence … constituted an illegal sentence in violation of" *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

> According to the *Alleyne* Court, a fact that increases the sentencing floor is an element of the crime. Thus, it ruled that facts that mandatorily increase the range of penalties for a defendant must be submitted to a fact-finder and proven beyond a reasonable doubt. The *Alleyne* decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard.

*Commonwealth v. Watley*, 81 A.3d 108, 117 (Pa. Super. 2013) (footnote

omitted).

> In *Watley*, we held that *Alleyne*
>
> necessarily implicated Pennsylvania's legality of sentencing construct since it held that it is improper to sentence a person to a mandatory minimum sentence absent a jury's finding of facts that support the mandatory sentence. Application of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits. Legality of sentence questions are not waivable and may be raised *sua sponte* by this Court.

*Watley*, 81 A.3d at 117–18 (footnotes and citations omitted).

In the present case, the Commonwealth sought imposition of

mandatory sentences because

> Counts Two and Three of the Bill of Information involve two or more grams of a Schedule I or II narcotic thereby mandating a minimum period of incarceration of <u>two</u> <u>years</u> in a state correctional institution and a five thousand dollar ($5,000.00) fine pursuant to Section 7508 of the Crimes Code.

Notice, at 1-2.

Although the Commonwealth failed to cite the specific provision of 18

Pa.C.S. § 7508 in the Notice, we can deduce that the Commonwealth was

referring to Section 7508(a)(2)(i), which reads as follows:

> (2) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is classified in Schedule I or Schedule II under section 4 of that act and is a narcotic drug shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:
>
>> (i) when the aggregate weight of the compound or mixture containing the substance involved is at least 2.0 grams

and less than ten grams; two years in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; …

18 Pa.C.S. § 7508(a)(2)(i).

Thus, synthesizing the dictates of **Alleyne** with the terms of Section 7508(a)(2)(i), in order to impose a mandatory sentence of two years' incarceration and a $5000 fine, the Commonwealth was required to prove to the jury, beyond a reasonable doubt, that Appellant sold at least 2.0 grams of a Schedule I or Schedule II narcotic. It is apparent from the record that the jury was not asked to determine whether the Commonwealth met this burden, nor is there any evidence that Appellant conceded the matter. Consequently, the imposition of the mandatory sentence in this case was illegal under the dictates of **Alleyne**. Accordingly, we vacate Appellant's sentence and remand this case for resentencing.

Judgment of sentence **vacated**. Case **remanded** for resentencing consistent with this memorandum. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014

- 11 -