J-S95021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALPHONSO DASHIELL | |
| Appellant | No. 495 EDA 2016 |

Appeal from the Judgment of Sentence January 8, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008239-2015

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                    **FILED MAY 05, 2017**

Alphonso Dashiell appeals from the January 8, 2016 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for carrying a firearm without a license, carrying a firearm on the public streets or property of Philadelphia, possessing an instrument of crime ("PIC"), and attempted theft of a motor vehicle.[1]  We affirm.

The well-reasoned opinion of the Honorable Sierra Thomas Street set forth the detailed factual and procedural history underlying this appeal, which we adopt and incorporate herein.  *See* Trial Ct. Op., 6/21/16, at 1-8 ("1925(a) Op.").

---

[1] 18 Pa.C.S. §§ 6106(a)(1), 6108, 907(a), and 901(a), respectively.

Dashiell raises two issues on appeal:

    I.    The evidence was insufficient as a matter of law to sustain the verdicts of guilt as to the crimes of Firearms Not to be Carried Without License (F3), Carrying a Firearm on Public Streets in Philadelphia (M1), Possession of an Instrument of Crime with Intent (M1), and Criminal Attempt-Theft from a Motor Vehicle (M1).

    II.    The verdicts of guilt as to the four (4) aforementioned crimes are against the weight of the evidence.

Dashiell's Br. at 4 (footnotes omitted).

Dashiell first argues that the "Commonwealth's evidence adduced at trial resulting in a judgment was not legally sufficient to establish [Dashiell]'s guilt of the [aforementioned] crimes." *Id.* at 8. This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

With respect to the firearms convictions, Dashiell argues that the Commonwealth "failed to prove beyond a reasonable doubt that . . . [Dashiell] had actual or constructive possession of the firearm." Dashiell's Br. at 8. According to Dashiell, "Officer Negler never actually saw Dashiell carrying or disposing of a firearm" and "the Commonwealth was unable to offer any additional witnesses to corroborate the officer's testimony that [Dashiell] possessed and/or tossed the firearm that was subsequently located in a grassy area on another street (from where the arrest occurred)." *Id.* We disagree.

In its opinion, the trial court set forth the elements of the firearms offenses, addressed Dashiell's claims, and properly determined that the evidence was sufficient to support the firearms convictions. *See* 1925(a) Op. at 10-14. The evidence presented by the Commonwealth showed that police recovered the firearm on the public streets of Philadelphia, "150 feet away from where Dashiell was first observed and five . . . minutes after his arrest," the firearm was not registered to Dashiell, and Dashiell was not licensed to carry a firearm. *Id.* at 11-14. Further, when questioned, Dashiell admitted to police that he possessed the firearm on the night in question. *Id.* at 12. After reviewing the briefs, the record, and the relevant law, we affirm based on the trial court's reasoning. *Id.* at 10-14.

With respect to the PIC conviction, Dashiell argues that "the Commonwealth failed to prove beyond a reasonable doubt that . . . Dashiell had actual or constructive possession of instruments of crime or that [he] possessed the instruments for the specific purpose (intent) of employing them criminally." Dashiell's Br. at 8. According to Dashiell, Officer Negler only saw, from a long distance with binoculars, Dashiell attempt to break into the motor vehicle with the single metal rod and then, minutes later, stopped Dashiell without observing him discard anything. *Id.* at 9. Dashiell further asserts that even if the officer had established that Dashiell was in actual or constructive possession of an instrument of crime, the Commonwealth failed to prove that Dashiell "possessed the instruments for the specific purpose of employing them criminally." *Id.* According to Dashiell, "[a]t no point did the Commonwealth produce or enter into evidence the instruments of crime that it claimed . . . Dashiell possessed at the time of the incident" and "there are inconsistencies within the various reports and testimony as to where the instruments were actually located." *Id.* This claim is without merit.

In its opinion, the trial court set forth the elements of PIC, addressed Dashiell's claims, and properly determined that the evidence was sufficient to support the PIC conviction. *See* 1925(a) Op. at 14-16. The evidence showed that Dashiell possessed a slim metal rod that he applied to the door of a vehicle in an attempt to break into said vehicle. *Id.* at 15. Officer Negler watched Dashiell use the metal rod and later found scratches "all

over the door of the vehicle." *Id.* Officer Negler later recovered two of these rods, along with a pair of gloves, a screwdriver, and a flashlight "in the middle of the same block where he first observed [Dashiell]." *Id.* After reviewing the briefs, the record, and the relevant law, we affirm based on the trial court's reasoning. *Id.* at 14-16.

With respect to the attempted theft of a motor vehicle conviction, Dashiell argues that "the Commonwealth failed to prove beyond a reasonable doubt that . . . Dashiell had the intent to commit the crime of Theft from a Motor Vehicle or that he engaged in any act that constituted a substantial step towards the commission of that crime." Dashiell's Br. at 10. We disagree.

In its opinion, the trial court set forth the elements of attempted theft of a motor vehicle, addressed Dashiell's claim, and properly determined that the evidence was sufficient to support the attempt conviction. *See* 1925(a) Op. at 16-18. The evidence showed that Officer Negler observed Dashiell "utilizing a metal rod against a vehicle in an attempt to unlawfully enter" and "scratches were subsequently discovered on the door of the vehicle." *Id.* at 16. Officer Negler also testified that Dashiell continued to use the rod until Dashiell "acknowledged the Officer's presence." *Id.* at 17. Officer Negler also recovered, among other things, two metal rods 150 feet from where Officer Negler had first observed Dashiell using the metal rod. *Id.* After reviewing the briefs, the record, and the relevant law, we affirm based on the trial court's reasoning. *Id.* at 16-18.

- 5 -

Next, Dashiell argues that his convictions were against the weight of the evidence, "as the Commonwealth's proffered evidence is all derived solely from the inconsistent and vague statements of Officer Negler." Dashiell's Br. at 10. The Commonwealth argues that Dashiell has waived these claims and, even if Dashiell had preserved them for review, they are meritless. Cmwlth.'s Br. at 10-11.

We conclude that Dashiell waived his weight of the evidence claims, because he failed to raise them before the trial court. Pennsylvania Rule of Criminal Procedure 607(a) sets forth the requirements for preserving weight of the evidence challenges:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) orally, on the record, at any time before sentencing;
> >
> > (2) by written motion at any time before sentencing; or
> >
> > (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). Here, the record shows that Dashiell did not challenge the weight of the evidence, by oral or written motion, before sentencing and did not file a post-sentence motion. Because Dashiell did not present these claims before the trial court, he has waived them.[2] *See Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa.Super. 2014).

---

[2] Even if Dashiell had preserved his weight claims for review, we would conclude that he is not entitled to relief based upon the trial court's analysis. *See* 1925(a) Op. at 10-18.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/5/2017

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR-0008239-2015** |
| | : | |
| | : | |
| **v.** |  | |
| | | |
| **ALPHONSO DASHIELL** | | **SUPERIOR COURT** |
| | | **NO. 495 EDA 2016** |

7463232031

**OPINION**

THOMAS STREET, J.                                                    June 21, 2016

I.    **OVERVIEW AND PROCEDURAL HISTORY**

The Defendant, Alphonso Dashiell, was arrested and charged with *inter alia* Firearms

Not to be Carried Without License (F3),[1] Carrying a Firearm on Public Streets in Philadelphia

(M1),[2] Possession of an Instrument of Crime with Intent (M1),[3] and Criminal Attempt- Theft

from a Motor Vehicle (M1)[4] for an incident that took place at 2:39 a.m. on April 5, 2015.  The

Defendant was arrested after police officers observed him attempting to commit theft from a

motor vehicle.  A pair of gloves, screwdriver, two metal rods, flashlight and a fully loaded

firearm were recovered five (5) minutes later and one hundred fifty (150) feet away from where

the Defendant was first observed.

On November 2, 2015, a non-jury trial was held by this court in which the Defendant was

found guilty of the aforementioned charges.  A pre-sentence investigation was ordered.  On

January 8, 2016, this court sentenced the Defendant to eleven-and-a-half (11 ½) to twenty-three

---

[1] 18 Pa.C.S. § 6106 §§ A1
[2] 18 Pa.C.S. § 6108 §§ A1
[3] 18 Pa.C.S. § 907 §§ A
[4] 18 Pa.C.S. § 901 §§ A

**Received**

JUN 21 2016

Office of Judicial Records
Appeals/Post Trial

1

(23) months of incarceration with immediate parole plus thirty-six (36) months of consecutive reporting probation. The court noted it would consider parole to house arrest with proof of employment and/or educational vocation.

On February 8, 2016, the Defendant filed a timely Notice of Appeal. On February 11, 2016, the Defendant filed a Motion for Parole. On February 24, 2016, this court granted the Motion for Parole and released the Defendant to House Arrest with electronic monitoring. On April 6, 2016, upon receiving notes of testimony this court ordered the Defendant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On April 27, 2016, the Defendant filed a Statement of Matters Complained of on Appeal.

## II. FACTUAL HISTORY

Philadelphia Police Officer Joseph Negler testified that at approximately 2:39 a.m. on April 5, 2015 in the area of 4200 Tower Street Philadelphia, Pennsylvania, he observed the Defendant, Alphonso Dashiell, attempting to unlawfully enter a vehicle. (N.T. 11/2/15 pp. 9-11).[5] Officer Negler stated that he and his partner, Officer Eccleston, were in plainclothes and a plain car during his tour of duty that night. (N.T. 11/2/15 p. 10). Officer Negler testified that he was patrolling the 100 block of Rector Street, Philadelphia, Pennsylvania when he pulled up to the 4200 block of Tower Street and noticed the Defendant. *Id.*

Officer Negler testified that as he pulled up on the 4200 block of Tower Street he observed the Defendant "wiggling something with the car – trying to get in a car by hamming something in the car." (N.T. 11/2/15 p. 11). Officer Negler testified that he used binoculars and observed a metal rod around half-inch to an inch wide being used "up and down the car" by the Defendant. (N.T. 11/2/15 pp. 11, 14). Officer Negler testified that there were scratches all over

---

[5] All references to the record refer to the transcript of the non-jury trial recorded on November 2, 2015.

2

the door of the vehicle. (N.T. 11/2/15 p. 15). He observed the Defendant in the commission of this act for five (5) to ten (10) seconds. (N.T. 11/2/15 pp. 14, 20).

Officer Negler testified that he then made a U-turn, drove in the direction of the Defendant, and witnessed the same occurrence. (N.T. 11/2/15 pp. 11, 20). Officer Negler stated that he observed the Defendant for another five (5) to ten (10) seconds until the Defendant noticed him and his partner. (N.T. 11/2/15 pp. 14, 20). The Defendant "looked up our way" and began to walk toward the 100 block of Roxborough Avenue which was adjacent to the 100 block of Rector Street where officers were located. (N.T. 11/2/15 pp. 11, 21). The Defendant still had the metal rod in his right hand. (N.T. 11/2/15 pp. 14, 21).

Officer Negler testified that he observed a car next to the Defendant traveling in the same direction, westbound, on Roxborough Avenue as the Defendant walked away. (N.T. 11/2/15 p. 11). Officer Negler stated that he then exited his vehicle and began walking towards the Defendant in the direction of the 100 block of Roxborough Avenue. (N.T. 11/2/15 p. 15). The Defendant walked down the street from Roxborough Avenue on Silverwood Street where Officer Negler was located. *Id.* Officer Negler placed the Defendant under arrest and secured the vehicle operated by a female. *Id.* Officer Negler testified that he subsequently returned to the scene after securing the Defendant and the vehicle. (N.T. 11/2/15 p. 15). Officer Negler testified that as he was checking and surveying the area, and observed the following on a little piece of grass in the middle of the block: "evidence of a pair of gloves, screwdriver, the metal rod I seen [sic], another metal rod, flashlight, and a fully loaded 9mm Ruger with one in the chamber and seven in the magazine" roughly five (5) minutes after the arrest, and one-hundred and fifty (150) feet from where he physically arrested the Defendant. (N.T. 11/2/15 pp. 15, 16). Officer Negler testified that no other person was on the block when he recovered the

aforementioned items. *Id.* Officer Negler stated that he placed the screwdriver, metal rod, metal rod with a hook on it, flashlight, screwdriver, and gloves on Property Receipt No. 3199105. (N.T. 11/2/15 p. 17). The firearm, a 9mm Ruger, was placed on Property Receipt No. 3199106. *Id.* Officer Negler stated that the Defendant did not reveal whether or not he had a license to carry. *Id.*

Officer Negler testified that he was driving the unmarked vehicle on the night in question. (N.T. 11/2/15 p. 17). He stated that he observed the Defendant with his naked eye and fully stopped his vehicle before using his binoculars to observe further. (N.T. 11/2/15 p. 18). Officer Negler explained that he was in the middle of the intersection when he first observed the Defendant located in a residential area under a streetlight roughly fifty (50) to sixty (60) feet away with his binoculars. *Id.*

Officer Negler testified that upon initiating the arrest the Defendant was roughly half a block from the vehicle that he attempted to enter. (N.T. 11/2/15 p. 21). He stated that as he initially approached the Defendant, he asked what he was doing up here and the Defendant responded, "I don't have to tell you shit." *Id.* Officer Negler testified that he asked the Defendant for his name and the Defendant responded with the same response. *Id.* Officer Negler then placed the Defendant in handcuffs without physical resistance. *Id.*

Detective William Brown testified that he investigated a stolen firearm on April 5, 2015 involving the Defendant, Alphonso Dashiell. (N.T. 11/2/15 p. 23). He stated that he ran the firearm discovered by Officer Negler through the National Crime Information Center (NCIC) and Pennsylvania Crime Information Center (PCIC) and found that it belonged to Rosa Medina. (N.T. 11/2/15 p. 24). The NCIC report was marked Commonwealth Exhibit 1 (C-1). *Id.*

4

Detective Brown explained that the NCIC report displayed the serial number of the firearm, date of sale, owner's information with date of birth and county. (N.T. 11/2/15 p. 25).

Detective Brown stated that he took a statement from the Defendant inside the cell room and provided the Defendant with the opportunity to review and sign each page of the document. (N.T. 11/2/15 p. 25). Detective Brown read the Defendant's statement marked as Commonwealth Exhibit 2 (C-2) to the court:

QUESTION: Are you aware of the rights I read to you?
ANSWER: Yes.
QUESTION: Where were you stopped by the police?
ANSWER: I don't know. It was around Roxborough.
QUESTION: Who were you with?
ANSWER: My girlfriend, Jessica.
QUESTION: Were you driving the vehicle?
ANSWER: I wasn't but my girlfriend was. It was my mom's car.
QUESTION: Did you have a gun with you that night?
ANSWER: It was in the car and I grabbed it once I saw the police circle back around. I tossed it in a bush but I don't know for sure.
QUESTION: Who owns the gun?
ANSWER: My mom.
QUESTION: Why did you have it?
ANSWER: To protect my mom from herself. She said she was going to hurt herself.
QUESTION: Was the gun loaded?
ANSWER: Yes. I don't know how many. I just knew it was loaded.
QUESTION: What kind of gun was it?
ANSWER: LC9mm.
QUESTION: Why did you toss the gun?
ANSWER: Because I didn't want to get caught with it. I never had it on my person. It was out of fear.
QUESTION: Did you try to break into a vehicle?
ANSWER: No.
QUESTION: Is there anything else you want to add?
ANSWER: I'm not a criminal.

(N.T. 11/2/15 pp. 26-27). The Commonwealth marked the ballistics report indicating that a 9mm Lug semiautomatic firearm with serial number 322-39192 was test-fired and found to be

5

operable. (N.T. 11/2/15 p. 30). The firearm was placed on Property Receipt No. 3199106 with the certificate of non-licensure indicating that the Defendant did not have a license to carry in Philadelphia. *Id.* All Commonwealth exhibits were moved into the record. *Id.*

Detective Brown testified that the Defendant was picked up by police around 3 o'clock and read his Miranda rights prior to being questioned. (N.T. 11/2/15 p. 28). Detective Brown verified that the Defendant revealed to him that he had the firearm as he was trying to protect his mother from herself. *Id.*

A stipulation was entered by and between counsel that if Councilman Greenlee were called to testify he would state that he has known the Defendant for most of the Defendant's life and knows the Defendant to have a reputation for peacefulness and law abidingness in the community. (N.T. 11/2/15 pp. 24-25). Other character witness' were offered by name to the court. *Id.*

The Defendant testified that on April 4, 2015 at around 10:00 p.m. the Defendant's mother had a "breakdown incident" in which she threatened to harm herself. (N.T. 11/2/15 p. 36). The Defendant testified that as a result of this incident he decided to take her firearm away from her possession. *Id.* The Defendant revealed that he decided to place the firearm in a location in which his mother would not think to check at the moment. (N.T. 11/2/15 p. 37). Later that night around 3:00 a.m., the Defendant testified that he decided to go for a run on Kelly Drive to clear his head. *Id.* Before the Defendant commenced his workout, the Defendant revealed that he took the firearm with him for his mother's safety. (N.T. 11/2/15 p. 38).

The Defendant testified that Officer Negler initially drove by him on the corner of Roxborough and that as Officer Negler passed him a second time he desired to disclose to Officer Negler his situation regarding his mother. (N.T. 11/2/15 p. 38). As he approached

6

Officer Negler, the Defendant testified that Officer Negler initially asked him "Are you stealing cars?" (N.T. 11/2/15 p. 39). The Defendant asserted that thereafter Officer Negler quickly detained and arrested him. *Id.* The Defendant testified that he later told Detective Brown that he was very scared for his mother's health and well-being which was his main concern and that Detective Brown neglected to write that down. *Id.*

On cross-examination, the Defendant testified that his mother had the firearm since 2012 and that both he and his mother used her vehicle. (N.T. 11/2/15 p. 40). The Defendant affirmed that although he initially wanted to flag the officers down he did not do so the first time because "they were speeding down the block." (N.T. 11/2/15 p. 41). He then explained:

> The first time I never tried to flag them down. I saw them eyeing me and I thought that was the end of it. The second time I saw them coming they had driven and made a right away from me then they made the U-turn towards me and I knew what was happening. At that point my girlfriend drove off and he came speeding down and around the corner before I could even flag them down. (N.T. 11/2/15 p. 41).

The Defendant stated that he was leaning up against the driver side door of his mother's white 2004 Chrysler Pacifica having a conversation with his girlfriend when Officer Negler initially spotted and observed him. (N.T. 11/2/15 pp. 41-42).

The Defendant testified that he did not have a metal rod, flashlight, or screwdriver in his hand or in his possession at any time during the night of the incident. (N.T. 11/2/15 pp. 42-43). The Defendant admitted, however, that he did have the firearm in his possession that night. (N.T. 11/2/15 p. 43). The Defendant testified that he "hid the gun" upon seeing Officer Negler coming back a second time around toward his direction. *Id.* The Defendant explained that when he saw Officer Negler approaching, his girlfriend panicked and took the firearm out of hiding

7

from his mother's vehicle and gave it to him. *Id.* At which point, the Defendant stated to her, "Just give it to me. I'll hide it." *Id.*

The Defendant testified that his girlfriend then drove off in his mother's vehicle. (N.T. 11/2/15 p. 43). The Defendant stated that after his girlfriend drove off he could no longer physically see Officer Negler and proceeded to walk down the block. *Id.* When counsel asked what the Defendant was doing at the location of 4200 Tower Street, he explained that it is three (3) blocks from Kelly Drive. (N.T. 11/2/15 p. 44). The Defendant disclosed that he attempted to wave down Officer Negler to ensure that he understood the circumstances of the situation. *Id.* The Defendant testified that he knew that Officer Negler was a police officer despite being in an unmarked vehicle because of his experience in living in the "ghetto." (N.T. 11/2/15 p. 45). The officer was also driving slowly and made eye contact. *Id.* The Defendant testified that as he approached the corner of the block Officer Negler appeared ready to initiate an arrest asking, "Are you stealing cars?" (N.T. 11/2/15 p. 44). When asked by the court whether he always runs at 2:30 a.m., the Defendant stated that he runs at different times of night because he is a "personal trainer and fitness freak." *Id.*

## III. ISSUES

In the Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, the Defendant identifies the following issues:

1. The Court erred as matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 6106 (a)(1) because the verdict was against the weight of the evidence.

2. The evidence was insufficient as a matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 6106 (a)(1) because the evidence was insufficient to prove that Mr. Dashiell had actual or constructive possession of the firearm.

8

3. The trial court erred as a matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 6108 because the verdict was against the weight of the evidence.

4. The evidence was insufficient as a matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 6108, because the evidence was insufficient to prove that Mr. Dashiell had actual or constructive possession of the firearm.

5. The trial court erred as a matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 907 (a) because the verdict was against the weight of the evidence.

6. The evidence was insufficient as a matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 907 (a) because the evidence was insufficient to prove that Mr. Dashiell had actual or constructive possession of the instrument or that Mr. Dashiell acted with the requisite intent.

7. The evidence was insufficient as a matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 901 (a) because the evidence was insufficient to prove that Mr. Dashiell had actual or constructive possession of the instrument or that Mr. Dashiell acted with the requisite intent.

8. The trial court erred as a matter of law to convict Mr. Dashiell of 18 Pa. C.S. § 901 (a) because the verdict was against the weight of the evidence.

## IV.  **STANDARD OF REVIEW**

A challenge to the sufficiency of evidence is a question of law. *Commonwealth v. Heater,* 2006 Pa. Super. 86, 11, 899 A.2d 1126, 1131 (2006) (*citing Commonwealth v. Widmer,* 560 Pa. 308, 319, 744 A.2d 745, 751 (2000)). The role of an appellate court in reviewing the weight of the evidence is very limited. *Commonwealth v. Holmes,* 444 Pa. Super. 257, 264, 663 A.2d 771, 774 (1995). When reviewing a sufficiency of the evidence claim, a court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and must determine if the evidence, thus viewed, is sufficient to enable the fact-finder to find every element of the offense beyond a reasonable

9

doubt. *Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992); *Commonwealth v. Marks,* 704 A.2d 1095 (Pa. Super. 1997).

A reviewing court may not weigh the evidence or substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Adams,* 2005 Pa. Super. 296, 882 A.2d. 496, 498–99 (Pa. Super. 2005). An appellate court may reverse a lower court's verdict only in the instance that it is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Hunzer,* 868 A.2d 498, 506–507 (Pa. Super. 2005), appeal denied, 584 Pa. 673, 880 A.2d 1237 (2005). Whether a new trial should be granted on the ground that a conviction was against the weight of the evidence is addressed to the sound discretion of the trial judge, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *Commonwealth v. Petteway,* 847 A.2d 713, 716 (Pa. Super. 2004) (*citing Commonwealth v. Davis,* 799 A.2d 860, 865 (Pa. Super. 2002)).

Additionally, the Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *See Commonwealth v. Adams,* 2005 Pa. Super 296, 882 A.2d. 496, 499 (Pa. Super. 2005); *see also Commonwealth v. Murphy,* 2002 Pa. Super. 84, 795 A.2d 1025, 1038–39 (Pa. Super. 2002) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). "If the record contains support for the verdict, it may not be disturbed." *Adams,* 882 A.2d. at 499.

## V. __DISCUSSION__

In his Statement of Errors Complained of on Appeal, the Defendant raises sufficiency and weight claims on his convictions for Firearms Not to be Carried Without License (F3), Carrying a Firearm on Public Streets in Philadelphia (M1), Possession of an Instrument of Crime with

10

Intent (M1), and Criminal Attempt- Theft from a Motor Vehicle (M1). This court will consolidate the eight (8) separate claims pertaining to each conviction to efficiently address these issues on appeal.

First, the Defendant argues his conviction for Firearms Not to be Carried Without License (F3) is not supported by the greater weight of the evidence. Moreover, he claims that the evidence was insufficient as a matter of law to convict him of Firearms Not to be Carried Without a License (F3) because the evidence was insufficient to prove that he had actual or constructive possession of the firearm. This court disagrees.

Section 6106 (a)(1) states:

> (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106 (a)(1).

Here, the Commonwealth presented sufficient evidence for this court to find the Defendant guilty of Firearms Not to be Carried Without a License (F3). It is undisputed that the Defendant on the day in question was carrying a firearm in his possession. Officer Negler recovered the firearm five (5) minutes after the Defendant was arrested and one hundred fifty (150) feet away from where the Defendant was first observed. (N.T. 11/2/15 p. 15). The Defendant himself testified that he did in fact have a firearm in his possession. (N.T. 11/2/15 p. 43). In his statement to police, he explained that he took the firearm from his mother earlier that night and placed it in her vehicle. (N.T. 11/2/15 p. 27). He testified that he hid the firearm upon seeing Officer Negler approach him. (N.T. 11/2/15 p. 43). The firearm was revealed not to be licensed under the Defendant's name and instead to Rosa Medina. (N.T. 11/2/15 p. 24). A

11

certificate of non-licensure was entered into evidence and revealed that the Defendant did not have a license to carry in Philadelphia. (N.T. 11/2/15 p. 30). Accordingly, the evidence was sufficient to find the Defendant guilty of Firearms Not to Be Carried Without a License (F3).

Here, the Commonwealth also presented evidence which the fact finder was free to accept as true to sustain the Defendant's conviction. Officer Negler's credible testimony provided circumstantial evidence to find that the Defendant possessed a firearm. Officer Negler testified that he located the firearm on a small piece of grass along with several items near the area where he first observed the Defendant with a metal rod in his hand. (N.T. 11/2/15 p. 15). *Id.* Detective Brown stated that he ran the firearm discovered by Officer Negler through NCIC and PCIC and found that it did not belong to the Defendant. (N.T. 11/2/15 p. 24).

By way of his own admission, the Defendant himself testified that he did in fact have a firearm in his possession during the night of the incident. (N.T. 11/2/15 p. 43). The Defendant testified that he took the firearm from his mother earlier that night and placed it in her vehicle. (N.T. 11/2/15 p. 27). The Defendant stated that he hid the firearm upon seeing Officer Negler approach him. (N.T. 11/2/15 p. 43). Specifically, he disclosed that his girlfriend handed him the firearm from within his mother's vehicle and he then tried hide it from the officer. *Id.* His explanation as to how he possessed the gun was somewhat incredible to this court. Nevertheless, the Defendant displayed a consciousness of guilty in hiding the firearm from officers. Accordingly, the verdict was not against the weight of the evidence.

Second, the Defendant argues that his conviction for Carrying a Firearm on Public Streets in Philadelphia (M1) is not supported by the greater weight of the evidence. Moreover, he claims that the evidence was insufficient as a matter of law to convict him of Carrying a Firearm

12

on Public Streets in Philadelphia (M1) because the evidence was insufficient to prove that he had actual or constructive possession of the firearm. This court disagrees.

Section 6108 states:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
> (1) such person is licensed to carry a firearm; or
> (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S. § 6108.

Here, the Commonwealth presented sufficient evidence for this court to find the Defendant guilty of Carrying a Firearm on Public Streets in Philadelphia (M1). Officer Negler observed the Defendant in the public streets of Philadelphia and discovered a firearm in his possession registered to Rosa Medina. (N.T. 11/2/15 pp. 15, 24). Officer Negler recovered the firearm on public property in the middle of the block only one hundred and fifty (150) feet away from where the Defendant was first observed and five (5) minutes after his arrest. (N.T. 11/2/15 p. 15). The Defendant did not have a license to carry a firearm as revealed through a certificate of non-licensure. (N.T. 11/2/15 p. 30). Reports from NCIC and PCIC disclosed that the firearm in question was not licensed under the Defendant's name and instead to Rosa Medina. (N.T. 11/2/15 p. 24). Accordingly, Officer Negler's credible testimony and the Defendant's own admission coupled with physical evidence and circumstantial evidence presented this court with sufficient evidence to find the Defendant guilty of Carrying Firearms on Public Streets or Public Property in Philadelphia (M1).

Here, the Commonwealth also presented evidence which the fact finder was free to accept as true to sustain the Defendant's conviction of Carrying a Firearm on Public Streets in Philadelphia (M1). Officer Negler's credible testimony revealed that the firearm was originally

13

discovered on public property near the area where he first witnessed the Defendant near the 4200 block of Tower Street. (N.T. 11/2/15 p. 15). Officer Negler asserted that the firearm was recovered on the public streets of Philadelphia incident to arrest in the Defendant's possession along with other items of criminality including a pair of gloves, two metal rods, and a flashlight. (N.T. 11/2/15 p. 15).

The Defendant admitted that he had his mother's firearm in his possession on the night in question, which was not registered or licensed under his name. (N.T. 11/2/15 pp. 24, 43). By his own admission, the Defendant disclosed that he had possession of the firearm on the public streets of Philadelphia. Specifically, as noted previously, the Defendant testified that he took his mother's firearm from her and hid it in her vehicle. (N.T. 11/2/15 pp. 36-37). Although the Defendant's explanation of his actions on the night in question was somewhat incredible to this court, the Defendant displayed a consciousness of guilt by way of his own admission in hiding the firearm from officers. Accordingly, the verdict was not against the weight of the evidence and does not reveal a verdict that is shocking to one's sense of justice.

Third, the Defendant argues his conviction for Possession of an Instrument of Crime (M1) is not supported by the greater weight of the evidence. Moreover, he claims that the evidence was insufficient as a matter of law to convict him of Possession of an Instrument of Crime (M1) because the evidence was insufficient to prove that he had actual or constructive possession of the firearm. This court disagrees.

Section 907 states:

> (a) Criminal instruments generally.--A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S. § 907.

14

Here, the Commonwealth presented sufficient evidence for this court to find the Defendant guilty of Possession of an Instrument of Crime (M1). Officer Negler testified that he discovered a pair of gloves, two metal rods, a screwdriver, and a flashlight in the middle of the same block where he first observed the Defendant. (N.T. 11/2/15 pp. 15, 16). Officer Negler observed the Defendant attempting to unlawfully enter a vehicle with one of the metal rods. (N.T. 11/2/15 pp. 11, 14). Officer Negler asserted that the Defendant used the metal rod "up and down the car" in an attempt to enter the vehicle. *Id.* Scratches were later discovered all over the door of the vehicle. (N.T. 11/2/15 p. 15). Accordingly, the evidence was sufficient to find the Defendant guilty of Possession of an Instrument of Crime (M).

Here, the Commonwealth also presented evidence which the fact finder was free to accept as true to sustain the Defendant's conviction of Possession of an Instrument of Crime with Intent (M1). Officer Negler's credible testimony reveals that the Defendant had in his possession a metal rod around half-inch to an inch wide being used against a car door in an attempt to enter. (N.T. 11/2/15 pp. 11, 14). Officer Negler disclosed that there were several scratches and markings on the door of the vehicle in which the Defendant was attempting to enter. (N.T. 11/2/15 p. 15). Officer Negler explained that he observed the Defendant engaged in this act for nearly a total of twenty (20) seconds. (N.T. 11/2/15 pp. 14, 20).

Officer Negler testified that pursuant to the arrest, he surveyed the area in which the Defendant engaged in suspicious activity and found on a little piece of grass in the middle of the block "evidence of gloves, screwdriver, the metal rod that he observed the Defendant using, another metal rod, flashlight, and a fully loaded 9mm Ruger with one in the chamber and seven in the magazine." (N.T. 11/2/15 p. 15). Officer Negler's credible testimony revealed that he discovered these items roughly five minutes after arresting the Defendant and one-hundred and

15

fifty (150) feet from the location where he first observed him. (N.T. 11/2/15 p. 16). No other person according to Officer Negler was on the block during the time when the incident, arrest, and discovery of the aforementioned items occurred. *Id.*

The Defendant admitted that he had his mother's firearm in his possession on the night in question, which was not registered or licensed under his name. (N.T. 11/2/15 pp. 24, 43). By his own admission, the Defendant disclosed that he had possession of such an instrument of crime. Accordingly, the verdict was not against the weight of the evidence and does not reveal a verdict that is shocking to one's sense of justice.

Lastly, the Defendant argues that his conviction for Criminal Attempt- Theft from a Motor Vehicle (M1) is not supported by the greater weight of the evidence. Moreover, he claims that the evidence was insufficient as a matter of law to convict him of Criminal Attempt- Theft from a Motor Vehicle (M1) because the evidence was insufficient to prove that he had actual or constructive possession of the firearm. This court disagrees.

Section 901 states:

> (a) Definition of attempt.--A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S. § 901.

Here, the Commonwealth presented sufficient evidence for this court to find the Defendant guilty of Criminal Attempt- Theft from a Motor Vehicle (M1). The Defendant made a substantial step toward the commission of Theft from a Motor Vehicle on the night in question. Officer Negler testified that he observed the Defendant utilizing a metal rod against a vehicle in an attempt to unlawfully enter. (N.T. 11/2/15 pp. 11, 14). Scratches were subsequently discovered on the door of the vehicle. (N.T. 11/2/15 p. 15). Officer Negler testified that the

16

Defendant was engaged in this activity continuously until the Defendant acknowledged the Officer's presence. (N.T. 11/2/15 pp. 11, 20). Officer Negler later recovered a pair of gloves, screwdriver, two metal rods, a flashlight, and a screwdriver in the immediate area where the Defendant was first observed. (N.T. 11/2/15 p. 15). Accordingly, the evidence was sufficient to find the Defendant guilty of Criminal Attempt- Theft from a Motor Vehicle (M1).

Here, the Commonwealth also presented evidence which the fact finder was free to accept as true to sustain the Defendant's conviction of Criminal Attempt- Theft from a Motor Vehicle (M1). Officer Negler's credible testimony revealed that the Defendant was in fact attempting to unlawfully enter a motor vehicle with the intent to commit theft. Officer Negler testified that he observed the Defendant "wiggling something with the car – trying to get in a car by jamming something in the car." (N.T. 11/2/15 p. 11). Officer Negler explained that he witnessed the Defendant utilizing a metal rod, around half-inch to an inch wide, "up and down the car." (N.T. 11/2/15 pp. 11, 14). Scratches all over the front door of the vehicle were later discovered by Officer Negler. (N.T. 11/2/15 p. 15).

After apprehending the Defendant, Officer Negler discovered a pair of gloves, screwdriver, the metal rod he observed the Defendant utilizing, another metal rod with a hook, and a firearm roughly five minutes after arresting the Defendant and one-hundred and fifty (150) feet from the location where he arrested the Defendant. (N.T. 11/2/15 pp. 15,16). Officer Negler's credible testimony revealed that the Defendant was in fact attempting to commit Theft from a Motor Vehicle and made a substantial step toward that commission when he "wiggled" an "jammed" a metal rod into a vehicle. Moreover, additional related items were found in close proximity.

17

The Defendant denied possession of all items recovered except for the firearm. (N.T. 11/2/15 pp. 42-43). He explained to the court that he was running at 2:30 a.m. on Kelly Drive and desired to flag down the officer to report an incident regarding his mother but never had the opportunity because officers were speeding down the block. (N.T. 11/2/15 pp. 41-45). The Defendant's account of the night in question was incredible in light of the overwhelming physical and circumstantial evidence. Upon review of the weight challenge, this court concludes that the verdict was not against the weight of the evidence and does not reveal a verdict that is shocking to one's sense of justice.

## VI.     CONCLUSION

For all of these reasons, this court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: **June 21st**, 2016

18